**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

In re Application of

INTERGLOBE ENTERPRISES PRIVATE LIMITED and RAHUL BHATIA

For an Order to Take Discovery from Dr. Anupam Khanna Pursuant to 28 U.S.C. §1782 in Aid of a Foreign Proceeding

Civil Action No. 8:19-cv-03012

# *EX PARTE* APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. §1782

InterGlobe Enterprises Private Limited ("**IGE**") and Rahul Bhatia (collectively, "**Petitioners**"), respectfully submit this Application to take discovery of Maryland resident, Dr. Anupam Khanna ("**Dr. Khanna**") pursuant to 28 U.S.C. §1782.

## I. NATURE OF THE APPLICATION

1. This is a proceeding brought pursuant to 28 U.S.C. §1782 to obtain evidence from Dr. Khanna for use in foreign legal proceedings.

2. 28 U.S.C. §1782(a) authorizes district courts to order persons "found" within the district to provide evidence in aid of foreign proceedings.

3. As set forth in the accompanying October 15, 2019 Declaration of Dheeraj Nair ("**Nair Dec.**"), the evidence that Petitioners seek is for use in an arbitration ("**LCIA Arbitration**") commenced by Petitioners on October 1, 2019 before the London Court of International Arbitration (India) ("**LCIA**") under the LCIA India Arbitration Rules 2016 against Mr. Rakesh Gangwal, the Chinkerpoo Family Trust, Ms. Shobha Gangwal (the "**RG Group**") and InterGlobe Aviation Limited ("**IndiGo**" or the "**Company**")[1] (collectively, the "**Arbitration Respondents**").

---

[1] IndiGo is a named Respondent in the Arbitration; however, Petitioners do not seek damages from the Company. Respondent IndiGo is a party to the LCIA Arbitration in order to provide it with the opportunity to make its own representations and so that any relief granted on an interim or final basis is effective. Nair Dec., ¶ 6.

Dr. Khanna is not a party to the LCIA Arbitration.

4. The LCIA Arbitration involves a dispute arising out of a Second Shareholders' Agreement executed on April 23, 2015, as amended on September 17, 2015 (the "**Second SHA**"), by and between Petitioners, Ms. Rohini Bhatia and Mr. Kapil Bhatia (collectively, the "**IGE Group**"), the RG Group and the Company.

5. As discussed in detail in Petitioners' accompanying Memorandum of Law, Petitioners meet the three statutory requirements set forth in 28 U.S.C. §1782 for granting a Section 1782 application and they satisfy the four discretionary factors enunciated in the Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241 (2004), for granting a Section 1782 application.

6. Petitioners therefore seek an Order allowing them to serve subpoenas which are the same, or substantially similar to, those attached hereto as **Exhibit A** (the "**Subpoenas**").

7. Petitioners have brought this Application on an *ex parte* basis in accordance with the well-established practice in this and other federal courts. *In re Green Dev. Corp. S.A. de C.V.*, No. WDQ-15-2985, 2015 WL 10319091, at *1 (D. Md. Oct. 1, 2015), *report and recommendation approved sub nom., In Re Green Dev. Corp. S.A. De C.V.*, No. CCB-15-2985, 2016 WL 640791 (D. Md. Feb. 18, 2016) ("A party may file–and a district court may grant–a Section 1782 application *ex parte*"); *see also, In re Chevron Corp.,* 753 F. Supp. 2d 536, 541 (D. Md. 2010) (granting Chevron's *ex parte* application seeking Section 1782 discovery); *see also Gushlak v. Gushlak*, 486 Fed. Appx. 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to §1782 *ex parte*."). Granting this Application on an *ex parte* basis will not impinge upon the respondent's due process rights, as he may subsequently move to quash the Subpoenas and/or vacate the order granting the Application. *See e.g., In re Polymer Sols. Int'l, Inc.*, No. DKC 18-1864, 2019 WL 1239778, at *2 (D. Md. Mar. 18, 2019) (concerning a motion to intervene to vacate a prior order granting Polymer's §1782 application and to quash the subpoena issued as a result); *Oncology Found. v. Avanza Dev. Servs.*, LLC, No. PX 17-1445, 2017 WL 2376769, at *2 (D. Md. May 30, 2017) (recalling that "once the subpoena is served on Avanza Development and Dr. Godin, each may file a motion to quash the subpoena in lieu of compliance, which will automatically reopen this matter."); *see also Gushlak,*

486 F. App'x 215, 217 (finding that "[t]he respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3).").

## II. THE PARTIES

8. Petitioner IGE is an Indian conglomerate with businesses in the civil aviation, hospitality, travel, education and real estate sectors. It is incorporated under the laws of India with its registered office in Jaipur and principal place of business in Gurgaon. *See* Nair Dec., ¶ 2.

9. Petitioner Rahul Bhatia is the Group Managing Director of IGE and is the co-founder, promoter, Non-Executive Director and shareholder of IndiGo.

10. The person from whom discovery is sought, Dr. Khanna, is a Non-Executive Independent Director of the Company and upon information and belief, resides in Bethesda, Maryland which is within this District. *Id.* at ¶ 14.

## III. PROCEDURAL AND FACTUAL BACKGROUND OF THE PETITION

11. The Second SHA governs the relationship between the IGE Group and the RG Group as well as their rights and obligations in relation to the Company. In particular, it provides that the IGE Group has "certain critical controlling rights in IndiGo, and that the IGE Group retains these rights irrespective of [its] shareholding levels." *See id.* at ¶ 9.

12. While the LCIA Arbitration is confidential, Petitioners provide the following broad summary of issues that may be useful for understanding the present application for relief under 28 U.S.C. §1782.

13. Specifically, Petitioners seek declaratory, injunctive, and monetary relief from the RG Group in the LCIA Arbitration to redress Mr. Gangwal's and the RG Group's breaches of the Second SHA. *Id.* at ¶ 11.

14. Examples of Mr. Gangwal and the RG Group's harmful actions include:

a. Mr. Gangwal extricating himself from the Company, including from his role as an advisor in relation to the acquisition of aircraft engines for IndiGo, and instead embarking upon a series of actions designed to put pressure on the IGE Group and IndiGo with a view to diluting the IGE

Group's critical controlling rights in IndiGo. *Id.* at ¶ 11(a);

b. Mr. Gangwal making unfounded allegations regarding IndiGo's corporate governance structure, including its related party transactions ("**RPTs**"), notwithstanding that an independent review of those transactions confirmed that the transactions were executed on an arm's length basis and in the ordinary course of business. *Id.* at ¶ 11(b);

c. Mr. Gangwal disseminating confidential and other sensitive information of the Company – including his unfounded allegations regarding improper RPTs – to Indian regulatory and governmental authorities including the Securities and Exchange Board of India ("**SEBI**"). *Id.* at ¶ 11(c);

d. Mr. Gangwal launching the website "GovernanceIndia.com" for the precise purpose of publicizing his dispute with the IGE Group and disseminating confidential information of the Company, including confidential deliberations of Indigo's Board of Directors (the "**Board**") and confidential emails exchanged between members of the Board. *Id.*;

e. Mr. Gangwal repeatedly attempting to obstruct the Board's initiatives for his own gain, specifically by (i) unnecessarily objecting to the preservation of the IGE Group's controlling rights with respect to, *inter alia*, the appointment of key managerial personnel and senior management; (ii) proposing (a) the implementation of onerous procedures for RPTs with IGE Group companies, (b) the re-examination of all existing RPTs with IGE Group companies, and (c) the termination or renegotiating of the RPTs in certain circumstances; and (iii) obstructing Board resolutions to expand its size, including through the appointment of a woman independent director. *Id.* at ¶ 11(d); and

f. Mr. Gangwal effectively repudiating the Second SHA by making representations to SEBI seeking to remove the IGE Group's controlling rights in IndiGo. *Id.* at ¶ 11(e).

15. Since Mr. Gangwal first made this dispute public in July 2019, the value of IndiGo's stock has dropped by 10.73% (*i.e.*, approximately USD 1.2 billion), causing the value of Petitioners' shareholding in IndiGo to decline. *Id.* at ¶ 13. Additional losses are expected to continue to accrue as a result of Mr. Gangwal's conduct. *Id.*

16. Moreover, throughout this period Dr. Khanna has engaged in significant contact with Mr. Gangwal, and the two have "act[ed] in concert" and that Dr. Khanna seems to work to "pursue Mr. Gangwal's agenda, with regard to aspects of the Company's activities." *Id.* at ¶ 14; *see also id.* ¶¶ 15-17. Dr. Khanna was also known to conduct Company business through the use of his private Gmail account, as evidence by certain documents uploaded by Mr. Gangwal on GovernanceIndia.com. *Id.* at ¶ 18; *see also* Nair Dec., Ex. A. Based on Mr. Gangwal's and Dr. Khanna's close relationship, Petitioners believe that Dr. Khanna is likely to be in possession, custody or control of documents and communications concerning the actions taken by Mr. Gangwal to the detriment of the Company. Petitioners therefore at this time seek document production and one or more depositions from Dr. Khanna. Such discovery is solely intended to aid Petitioners in the LCIA Arbitration and to assist them with witness examination.

17. With respect to documents, Petitioners believe that Dr. Khanna has within his possession, custody, or control:

a. Communications with (i) Mr. Rakesh Gangwal and/or any other member of the RG Group; (ii) any Shareholder, or (iii) any Company employee concerning:

   i. any Detrimental Act;

   ii. the appointment of an Independent Woman Director or any other Company employee;

   iii. the expansion of the Board and amendment of the Company's Articles of Association;

   iv. the Policy for Appointment of Key Managerial Personnel and Senior Management; and

b. Communications and correspondence with Mr. Gangwal and/or any

member of the RG Group, the Company or any Third Party concerning Mr. Bhatia and/or the IGE Group.

18. In addition, Petitioners seek to take one or more depositions of Dr. Khanna so that he can:

a. Provide testimony concerning the above-mentioned subjects; and

b. Authenticate documents produced pursuant to the subpoena *duces tecum*.

19. Proposed Subpoenas directed toward Dr. Khanna are attached hereto as **Exhibit A**.

WHEREFORE, Petitioners respectfully request that the Court grant their Application and allow them to serve the Subpoenas attached as Exhibit A upon Dr. Khanna, and such other and further subpoenas as are consistent with this Application; that the Court retain jurisdiction over this matter for the purpose of enforcing any subpoenas issued herein; and for such other and further relief as this Court deems just and proper.

Dated: October 15, 2019

Respectfully submitted,

/s/ *Jennifer C. Guest*

Jennifer C. Guest (MD Bar: 20494)
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Phone: 202.737.0500
Fax: 202.626.3737
jguest@kslaw.com

James E. Berger (*pro hac vice* pending)
Charlene C. Sun (*pro hac vice* pending)
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: (212) 556-2200

Fax: (212) 556-2222
jberger@kslaw.com
csun@kslaw.com

*Attorneys for Petitioners*